**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | Criminal Case No. 20-CR-00086-RAW-1 |
| v. | ) | |
| | ) | Civil Case No. 23-CV-00386-RAW |
| MIRANDA LYNNE REE, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## <u>ORDER</u>

Now before the court is the pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Miranda Lynne Ree ("Defendant"). [CR Doc. 121; CV Doc. 1]. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 132]. Defendant then filed a motion for appointment of counsel, motion for discovery and production of documents, and "motion to render judgment for discovery and production of documents." [CR Docs. 133, 136, and 138]. The Government filed a response in opposition to Defendant's motion for discovery and Defendant's motion for judgment on discovery motion. [CR Doc. 140]. This matter is ripe for ruling.

The Tenth Circuit Court of Appeals, in an order and judgment filed on February 2, 2023, provided the following summary of this case:

> One afternoon in September 2018, Ree and Bryan Chaney, along with Kasy Allen, Mary Edens, and Shaun Williams, were smoking methamphetamine inside a house in Broken Arrow, Oklahoma. Ree and Chaney lived in that house, and they had been arguing that day. At some point, Chaney retrieved a Coleman camping torch powered by an eight-to-twelve-inch propane tank that he and others used to smoke methamphetamine. Over the course of 45 or 50 minutes, Chaney repeatedly walked past the living room couch where Ree, Allen, and Williams were sitting while igniting the torch and pointing it at Ree; Williams testified that Chaney did this six to eight times, and Ree estimated it was eight to ten times.
>
> Chaney never burned Ree or anyone else, though Ree and Williams said they could feel the heat emanating from the torch. Allen and Edens testified that they heard Ree say she would stab Chaney if he did not stop. Williams and Ree testified that Ree simply said she would hurt Chaney if he did not stop.

Eventually, Williams pulled out his car keys from his pocket and told Ree they could leave. Williams testified that Chaney then walked past the living room couch, "sa[id] something about who [Ree] was dating at the time," ignited the torch, and left the living room area through a hallway. R. vol. 3, 115. Ree agreed to leave with Williams, but she first wanted to use the bathroom. So she walked down the same hallway Chaney had just entered, where the bathroom was located.

According to Ree, as she walked down the otherwise-empty hallway, Chaney came out of his bedroom and walked into the hallway with the torch. She testified that she told Chaney to leave her alone, but "he kept coming at [her]." *Id.* at 272. Ree could not recall whether Chaney had ignited the torch. But she told the jury that she was scared Chaney would burn and kill her. Ree said she reached into a closet to grab anything to defend herself, and she managed to find a knife. She testified that she again warned Chaney to leave her alone, but he "kept walking towards [her]." *Id.* at 273. And when he did, she stabbed him. The stab wound caused Chaney's death, and the forensic pathologist who performed Chaney's autopsy testified that the knife traveled from front to back, left to right, and downward.

After Ree stabbed Chaney, she told everyone in the house to call the police. She then left the house with Williams and the knife. While they were stopped at a Wal-Mart refueling Williams's car, Ree's friend Tiffany Bowers called Ree "to see what she was doing." *Id.* at 163. Ree told Bowers that she had done "something really bad and ... was really scared," but that she could not talk about it over the phone. *Id.* at 276. Bowers invited Ree to her home, and when Ree and Williams arrived, Ree told Bowers that she stabbed Chaney because he tried to burn her with the torch.

Sometime later, Ree and Williams left Bowers's home to purchase marijuana. On their drive back, Ree threw the knife out the car window. Ree returned to Bowers's home, and Ree's boyfriend, Christopher Del Rio, arrived shortly thereafter. Ree told Del Rio that she stabbed Chaney because he tried to burn her, and she left Bowers's home with him.

Meanwhile, back at the Broken Arrow house, officers arrived after Allen and Edens called the police. Edens had performed CPR on Chaney, and she testified that she did not see a torch next to Chaney when she saw him in the hallway. The officers also did not locate a torch in the hallway, but they found one in a bedroom. Ree testified that she did not move the torch and that she did not know how the torch ended up in the bedroom.

Williams saw Ree once more the following morning. He testified that Ree told him she was leaving Oklahoma and that Del Rio knew people in Texas or Mexico. A few days later, Ree arrived at her sister's home in Texas. She then self-surrendered after the United States Marshals Service advised her sister that Ree was wanted for first-degree murder.

At trial, Bowers testified, without objection, that Ree did not appear remorseful on the day Chaney died. Bowers also testified that Ree did not appear remorseful approximately six weeks after Chaney's death, when Bowers spent time around Ree while they were both in state custody. Ree's counsel objected to this latter testimony on relevance grounds, arguing that "anything that happened a month and a half or two months later would be entirely irrelevant." *Id.* at 171. The district court overruled the objection.

At the close of trial, the district court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. As relevant here, the district court instructed the jury that second-degree murder required the government to prove beyond a reasonable doubt that Ree killed Chaney with malice aforethought, which it defined for the jury as "to kill another person deliberately and intentionally[ ] or to act with callous and wanton disregard for human life." R. vol. 1, 138. Because Ree asserted that she acted in self-defense, the district court also provided a self-defense instruction. That instruction informed the jurors that they could convict only if the government proved beyond a reasonable doubt that Ree did not act in self-defense or that "it was not reasonable for [Ree] to think that the force she used was necessary to defend herself against an immediate threat." *Id.* at 139. The jury convicted Ree of second-degree murder, finding that Ree killed Chaney with malice aforethought and rejecting Ree's assertion of self-defense.

*United States v. Ree*, No. 21-7068, 2023 WL 1463241, at \*1-2 (10th Cir. Feb. 2, 2023) (unpublished) (footnotes omitted). [CR Doc. 119 at 1-5].

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). Based upon a total offense level of 38 and a criminal history category of III, the guideline imprisonment range was 292 to 365 months. *Id*. at ¶ 48. Defendant's sentencing hearing was held on December 15, 2021. [CR Doc. 98]. Paul Warren Gotcher, appointed counsel, was present with Defendant. *Id*. Defendant was sentenced to 365 months of imprisonment, to be followed by a five-year term of supervised release. *Id*. Judgment was entered on December 17, 2021. [CR Doc. 100].

Defendant's notice of appeal was filed on December 15, 2021. [CR Doc. 99]. Defendant argued "that the district court erred in allowing Bowers to testify that Ree did not appear remorseful approximately six weeks after Chaney's death because such testimony was irrelevant under Federal Rule of Evidence 401." *United States v. Ree*, 2023 WL 1463241, at \*2. The Government contended "that Bowers's testimony was relevant to show Ree's state of mind when she killed

Chaney." *Id*. The Circuit concluded that "[w]e need not resolve this dispute, however, because we agree with the government that any abuse of discretion in admitting Bowers's testimony was harmless." *Id*. Notably, the Circuit provided, in part, the following analysis:

> Next, Ree contends that she presented a substantial case of self-defense and that absent Bowers's testimony, the jury could have acquitted her or convicted her of a lesser-included offense such as voluntary or involuntary manslaughter. In support, she draws our attention to Chaney's violent behavior and repeated threats with the torch. She also invokes much of her own testimony and argues that her account of self-defense is more plausible than the government's alternative theories. In particular, Ree notes that the evidence showed that she consistently told others she stabbed Chaney because Chaney tried to burn her with the torch. And she explains that a stab wound to the chest travelling front to back is consistent with Chaney having approached her in the hallway.

> But Ree fails to rebut the record evidence that strongly supports a finding of malice aforethought and discredits her assertion of self-defense. She does not challenge, for instance, that she threatened to stab and hurt Chaney; that she could have left the house with Williams or requested help from others; that despite fearing for her life, she chose to walk through the same hallway that Chaney had entered only moments earlier; that she failed to turn away from the hallway when Chaney allegedly came towards her with the torch; that she failed to call the police after seriously injuring Chaney; that the torch Ree claimed Chaney held in the hallway was neither found nor seen next to Chaney's body; or that Ree fled days after the fatal incident. This undisputed evidence amply supports the jury's determination that the government proved beyond a reasonable doubt that Ree killed Chaney deliberately and intentionally or with callous and wanton disregard for human life. It also supports the jury's finding that the government proved beyond a reasonable doubt that Ree did not act in self-defense or that it was not reasonable for Ree to think that the force she used was necessary to defend herself against Chaney. And in light of this strong evidence of Ree's guilt, we are not convinced that Bowers's testimony about Ree's apparent lack of remorse approximately six weeks after the incident played a significant role in the jury's findings. *See United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996) (concluding that admission of one challenged piece of evidence was harmless because its admission "could not have prejudiced [the defendant], against whom the evidence was overwhelming").

> Ree nevertheless maintains that the jury could have interpreted some of the evidence the government relies on "as too equivocal to negate reasonable doubt." Rep. Br. 17. To be sure, a jury could make more than one inference from the evidence introduced at trial. But as Ree herself acknowledges, here, "there was also significant evidence supporting the government's theory of the case." *Id.* And the jury concluded, after reviewing all the evidence, that the government proved beyond a reasonable doubt that Ree killed Chaney with malice aforethought and not in self-defense. Given the strength of the evidence supporting these findings, we cannot say that Bowers's testimony had a substantial influence on the outcome

of Ree's trial; nor does it leave us in grave doubt as to whether it had such effect. Any error in admitting Bowers's testimony was harmless.

*Id*. at *4.  The Tenth Circuit found no reversible error and affirmed Defendant's conviction.  *Id*. The mandate was issued on February 24, 2023.  [CR Doc. 120].

Defendant's § 2255 motion was timely filed on November 14, 2023.  In the motion, Defendant asserts four grounds for relief.  In Ground One, Defendant contends that this court "abused its discretion when it admitted Tiffany Bower's testimony."  [CR Doc. 121 at 12].  In Ground Two, Defendant alleges that "[t]his was a crime of sudden quarrel or heat of passion, therefore Voluntary Manslaughter (Self Defense) NOT Second[-]Degree Murder with malice aforethought."  *Id*.  In Ground Three, Defendant argues that her attorney was ineffective for failing to call three witnesses to testify at trial.  *Id*. at 13.  In Ground Four, Defendant claims there were "[f]alse [s]tatements at [t]rial."  *Id*.

The Government contends in response that Defendant is not entitled to relief on her § 2255 claims.  The Government argues that Defendant's claim in Ground One "is barred as it was the same issue previously litigated on appeal and denied by the Tenth Circuit."  [CR Doc. 132 at 6]. The Government next argues that Defendant defaulted the claims in Grounds Two and Four because she failed to raise them on appeal.  *Id*. at 6-8.  Finally, with respect to Ground Three, the Government contends that Defendant cannot establish ineffective assistance of counsel.  *Id*. at 8-12.

Ground One.

In Ground One, Defendant alleges that this court "abused its discretion when it admitted Tiffany Bower's testimony."  [CR Doc. 121 at 12].  Defendant reasserts, in other words, a claim that was rejected by the Tenth Circuit on appeal.  The Government argues that "Defendant's attempt to re-litigate the issue is thus barred."  [CR Doc. 132 at 6].  The court agrees.  *See Foster v. Chatman*, 578 U.S. 488, 519 (2016) ("[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."); *see also United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a

5

collateral attack by a motion pursuant to § 2255."). Defendant does not identify any intervening change in law since her appeal was filed. Ground One is barred from re-litigation.

Grounds Two and Four.

The court will next consider whether Defendant's claims in Grounds Two and Four are procedurally barred. In Ground Two, Defendant alleges that "[t]his was a crime of sudden quarrel or heat of passion, therefore Voluntary Manslaughter (Self Defense) NOT Second[-]Degree Murder with malice aforethought." [CR Doc. 121 at 12]. In Ground Four, she asserts that there were "[f]alse [s]tatements at [t]rial." *Id*. at 13. Defendant notes that, during trial, the Government focused on the fact that the torch was not found in the hallway with Mr. Chaney's body, but Defendant claims "there is no doubt in anyone's testimony that Mr. Chaney did indeed possess a torch, lit it numerous times, and pointed it at the defendant." *Id*. Defendant also states that she did not go after Mr. Chaney in the hallway as the Government claimed at trial, but instead went down the hallway to use the restroom. She claims that she "had no choice but to go down the hallway to the restroom" because the other restrooms were not working. *Id*. Defendant claims, in part, that Mr. Chaney "continued to antagonize" her, that Defendant "picked up a knife from a shelf in the hallway," and that she stabbed Mr. Chaney "in the shoulder." *Id*. She claims that knives were "everywhere throughout the house," and that she did not leave the hallway to go to the kitchen to get a knife before stabbing Mr. Chaney. *Id*. Defendant also claims that she did not stab Mr. Chaney in the chest but instead stabbed him in the shoulder and that the blade reached his aorta, "unfortunately causing death." *Id*.

As noted hereinabove, Defendant filed a direct appeal and the Tenth Circuit affirmed. The Government argues that "Defendant defaulted the above claims, having failed to raise them on appeal." [CR Doc. 132 at 8]. The Government alleges that, "[t]o support her claims, Defendant's Motion merely reiterates testimony that was introduced at trial and lacks any evidence to support actual innocence or prejudice." *Id*. In addition, the Government contends that Defendant has not demonstrated that a fundamental miscarriage of justice would result from the application of the procedural bar." *Id*. Once more, the court agrees with the Government.

"A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citing *United*

*States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)). "When a defendant fails to raise an issue on direct appeal, [she] is barred from raising the issue in a § 2255 proceeding, unless [she] establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *Id.* Defendant has failed to establish cause and prejudice sufficient to overcome the procedural default rule. Moreover, Defendant has failed to demonstrate actual innocence, meaning she has failed to support a claim for miscarriage of justice. As such, Grounds Two and Four are procedurally barred.

Ground Three.

Defendant's claims in Ground Three are based on ineffective assistance of counsel. The procedural default rule does not apply to ineffective assistance of counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). The court will therefore address the merits of Defendant's ineffective assistance of counsel claims.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This

court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

Defendant claims that counsel was ineffective for failing to call three witnesses to testify at trial. [CR Doc. 121 at 13]. Defendant claims the first witness, Jeff McQueen, was an eyewitness to the stabbing of Mr. Chaney. *Id.* Defendant claims her attorney "refused to schedule an appointment with Mr. McQueen to discuss what he witnessed when [Mr. Chaney] was stabbed." *Id.* Next, Defendant claims a second witness, Donald Bowers, "was an eyewitness to the bruises that [Defendant] had on her body but [counsel] did not call him to testify." *Id.* Lastly, Defendant claims a "private investigator was hired to obtain evidence on [Defendant's] behalf and [counsel] would not call him to the stand to testify during the trial." *Id.* Defendant did not provide the name of the private investigator.

Be that as it may, Jeff McQueen and Donald Bowers were listed on the Defendant's witness list filed with the court. [CR Doc. 83-3 at 1]. As noted by the Government, defense counsel "obviously considered their purported testimony at trial." [CR Doc. 132 at 10]. Furthermore, Defendant does not state how the purported testimony of any of the witnesses would have rebutted the evidence presented against her.

Defendant's allegations are conclusory and do not establish ineffective assistance of counsel under *Strickland*. The court is "not required to fashion Defendant's arguments for [her] where [her] allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Ground Three is denied.

Other pending motions.

Defendant also filed a motion for appointment of counsel. [CR Doc. 133]. A district court *may* appoint counsel under 18 U.S.C. § 3006A, for any financially eligible person who is seeking relief under 28 U.S.C. § 2255, whenever the court determines that the interests of justice so

require. Defendant's claims are not legally or factually complex. Because the motion, files and records of this case conclusively show that Defendant is entitled to no relief, no evidentiary hearing was held. Defendant's request for counsel is denied.

Defendant also filed a motion for discovery and production of documents pursuant to Rule 6(a). [CR Doc. 136]. Defendant asserts in passing that "she is prosecuting a 2255 motion detailed facts [sic] concerning her claim that defense counsel provided ineffective assistance of counsel." *Id*. at 1. She refers to "[a]ll exculpatory, alibi defense, written or typed evidence, electronic versions, emails, letters, memos, forms of communication with witnesses from the U.S. Attorney's office." *Id*. at 1-2.

The court directed the Government to respond to the motion for discovery. [CR Doc. 137]. The Government did not timely respond to the discovery motion, and Defendant thereafter filed a "motion to render judgment for discovery and production of documents." [CR Doc. 138]. The Government was then directed to file an expedited response to both motions. [CR Doc. 139]. The Government filed a response in opposition to Defendant's motion for discovery and motion for judgment on the discovery motion. [CR Doc. 140].

The Government contends, in part, that Defendant is not entitled to discovery under Rule 6, and that Defendant's motion for discovery and production of documents "must be viewed in light of [Defendant's] failure to allege any valid grounds for relief in her initial [§ 2255] motion." [CR Doc. 140 at 7]. The Government alleges that "Defendant's motion is obviously a fishing expedition in search of an actionable claim, instead of what is required under Rule 6 – a request for specific documents in support of an existing, specific claim which could legally entitle Defendant to § 2255 relief." *Id*. at 9. The Government argues that "Defendant's allegations of ineffective assistance fail to legally show she would be entitled to relief, even if she had facts to support her argument, for all the reasons set out in the government's response [to Defendant's § 2255 motion] some months ago." *Id*. at 10. Further, the Government asserts that Defendant "has made no new claims and any such new claims would fail as untimely." *Id*. The Government's arguments are persuasive.

Rule 6 of the Rules Governing Section 2255 Proceedings states, in relevant part, as follows:

(a)     Leave of Court Required.  A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law.  If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

(b)     Requesting Discovery.  A party requesting discovery must provide reasons for the request.  The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  The Tenth Circuit has explained that "good cause" for discovery under Rule 6(a) is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Wallace v. Ward*, 191 F.3d 1235, 1245 (10th Cir. 1999) (quoting *Bracy*, 520 U.S. at 908-09); *see also United States v. Moya-Breton*, No. 11-4116, 439 Fed.Appx. 711, 716 (10th Cir. Sept. 27, 2011) (holding that district court did not abuse its discretion in denying Defendant's request for discovery in a § 2255 proceeding because he failed "to provide specific allegations showing reason to believe that the requested discovery would produce information supporting his ineffectiveness claims.").

In the case at hand, Defendant has failed to show good cause under Rule 6(a).  Defendant does not provide specific allegations showing reason to believe that the request for discovery would produce information supporting her ineffective assistance of counsel claim.  Defendant's motion for discovery and production of documents [CR Doc. 136] is denied.  Defendant's motion to render judgment for discovery and production of documents [CR Doc. 138] is denied as moot.

Certificate of Appealability.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  Upon consideration, this court finds that Defendant cannot meet either of these standards.  This court hereby declines to issue a certificate of appealability.

Conclusion.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 121; CV Doc. 1] is hereby DENIED.  Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.  Defendant's motion for appointment of counsel [CR Doc. 133] is DENIED.  Defendant's motion for discovery and production of documents [CR Doc. 136] is DENIED.  Defendant's motion to render judgment for discovery and production of documents [CR Doc. 138] is DENIED AS MOOT.

It is so ordered this 4th day of May, 2026.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

11